THE UNITED STATES DISTRCT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **AUBRE BOYD** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v.             ) | **COMPLAINT** |
| ) | |
| **WISCONSIN PHYSICIANS SERVICE** ) | **CASE NO. 25-CV-856** |
| **INSURANCE CORPORATION d/b/a** ) | |
| **WPS HEALTH SOLUTIONS** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |

**Preliminary Statement**

1. Aubre Boyd brings this action against the Defendant, Wisconsin Physicians Service Insurance Corporation d/b/a WPS Health Solutions ("WPS") pursuant to the Americans with Disabilities Act (42 U.S.C. §§ 12112 *et seq*.), as amended, and the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207 *et seq.*)*.* As set forth herein, WPS, along with joint employer Aston Carter[1] (hereinafter, collectively, "Employers"), employed Ms. Boyd as a remote call center employee in the "Claims Representative" position, from approximately February 2023 to September 2023. During Plaintiff Boyd's employment, WPS discriminated and retaliated against her in violation of the ADA by (1) refusing to accommodate her known disability and (2) subjecting her to discipline and constructive discharge for pretextual reasons after she filed a complaint regarding disability discrimination. Further, WPS failed to compensate Plaintiff, as well as all similarly situated employees, for overtime work suffered or permitted before and after scheduled work shifts, in violation of the FLSA.

---

[1] Due to Plaintiff's obligations under a mutual arbitration agreement, joint employer Aston Carter has not been named a defendant in this lawsuit.

1

2. Plaintiff brings this lawsuit against Defendant as a collective action, on behalf of herself and all those similarly situated, in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA), because of WPS' unlawful deprivation of current and former Claims Representatives' rights to overtime compensation under the FLSA. The Plaintiff and other current and former Claims Representatives are similarly situated to each other because, as set forth below, they have been subject to the same policies and/or practices that violate the FLSA whereby Defendant has suffered or permitted Plaintiffs to perform uncompensated overtime work before and after their paid shifts.

## Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12112, 42 U.S.C. 12203, 29 U.S.C. § 207 and 29 U.S.C. § 216.

4. Plaintiff exhausted her administrative remedies as to her ADA claims as more than 180 days have passed since she filed her complaint with the EEOC. Attached as Exhibit A is the Notice of Right to Sue issued by the U.S. Equal Employment Opportunity Commission ("EEOC") on April 30, 2025. Attached as Exhibit B is Plaintiff's Charge of Discrimination.

5. As set forth in paragraphs 10-25 below, Plaintiff commenced arbitration in this matter within the 90 days afforded in the right-to-sue letter, pursuant to a mutual arbitration agreement.

6. Defendant has refused to participate in the arbitration, although Plaintiff disputes Defendant's position on Defendant's obligation to arbitrate, Plaintiff seeks equitable tolling as, accepting Defendant's position, Plaintiff filed in good faith when she commenced arbitration pursuant to a mutual arbitration agreement applicable to her joint employers, Aston Carter and WPS, as a client of Aston Carter.

7. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this district as it is the district in which the defendant resides.

## Parties

8. Plaintiff Audre Boyd is a citizen of the United States and of the State of Maryland. From February 2023 to September 2023, Plaintiff was employed as a call center employee with Defendant WPS Health Solutions (then named Wisconsin Physicians Service Insurance Corporation) though a temporary placement by joint employer Aston Carter. Attached hereto as Exhibit C is a copy of Ms. Boyd's written consent to become a party-plaintiff, pursuant to 29 U.S.C. § 216(b).

9. Defendant WPS Health Solutions is a corporation established, regulated, and operated pursuant to the laws of the State of Wisconsin, regulations, and customs. WPS Health Solutions (hereinafter "WPS") is an employer within the meaning of 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 203(d).

## Procedural History

10. On July 3, 2025, Plaintiff commenced arbitration in this matter against her joint employers, WPS and Aston Carter, before JAMS, pursuant to a mutual arbitration agreement that requires all claims against Aston Carter and its "clients and customers" to proceed through arbitration. WPS was a client/customer of Aston Carter and plaintiff was working for WPS pursuant to an assignment by Aston Carter to its client/customer WPS.

11. When documents are e-filed with JAMS, they are served on the parties by JAMS. On July 7, 2025, a representative of JAMS also confirmed that service of documents by email is acceptable under JAMS rules.

12. In an abundance of caution, Plaintiff also served copies of the demand for arbitration on WPS through the counsel that represented the company during the EEOC process.

13. On July 15, 2025, Sarah Nevins, Arbitration Practice Manager with JAMS responded that acknowledging receipt of the demand for arbitration and seeking the complainant's (Plaintiff's) portion of the filing fee. JAMS confirmed receipt of this payment by check on August 5, 2025.

14. On July 21, 2025, JAMS circulated a notice of appearance of Erik Pramschufer, counsel for Aston Carter.

15. Having not received filing fees on behalf of the Respondents (WPS and Aston Carter), Nevins e-mailed the parties on August 20, 2025.

16. In the intervening weeks, Plaintiff made repeated attempts to follow up with counsel for WPS and Aston Carter regarding WPS's share of the filing fee, which was necessary for the arbitration to progress, but received no response from WPS.

17. On August 27, 2025, Nevins confirmed receipt of Aston Carter's share of the Respondent filing fee.

18. Nevins emailed again on September 3, 2025, to check on the status of WPS's filing fee.

19. On September 8, 2025, Richard Orton, of the law firm Gass Turek, responded for the first time and informed JAMS and Complainant that the Gass Turek who had been representing WPS in Ms. Boyd's EEOC matter was no longer with his firm and that his firm was no longer representing WPS in this matter.

20. Counsel for Plaintiff immediately sought to serve WPS at the physical address indicated on its website and in the Wisconsin Secretary of State registration information for its holding company (WPS Holdings), only to find out that this location was closed and that the

4

company had established a method of service by email through its Chief Legal and Administrative Officer.

21. The process server used by Plaintiff has successfully served and received admissions of service from WPS using this email service method at least as recently as July 2025.

22. On September 15, 2025, Anessa Abrams from the law firm For Harrison e-mailed counsel for Plaintiff and Aston Carter indicating she had been retained to represent WPS and to direct future communications to her.

23. That same day, September 15, 2025, Plaintiff's counsel emailed Ms. Abrams all of the documents that had been served on WPS previously and asked her to confirm that service had been effected. Abrams did not respond until September 17, 2025, when she stated that she would discuss with her client and "circle back." Counsel for Plaintiff immediately responded asking whether she would accept service in the event her client was contesting service, but Ms. Abrams made no response.

24. Counsel for Plaintiff followed up again with Ms. Abrams on September 23, 2025, and Ms. Abrams replied that she would respond by the end of the week.

25. On September 26, 2025, Ms. Abrams sent a letter on behalf of WPS to counsel for Plaintiff copying JAMS and counsel for Aston Carter, asserting for the first time that that her client had not been properly served and that JAMS lacked jurisdiction over the case as to WPS because WPS was not bound by the parties' mutual arbitration agreement. Although Plaintiff disputes these claims, after attempting unsuccessfully to confer with counsel for WPS about resolving this matter through arbitration pursuant to the mutual arbitration agreement, Plaintiff was left with no choice but to protect her rights by retaining the undersigned local counsel and filing the instant lawsuit.

**Facts**

26. On February 16, 2023, Plaintiff Aubre Boyd began her employment with WPS Call Center as a Claims Representative, through a temporary placement by Aston Carter, a temporary staffing agency.

27. Both WPS and Aston Carter exerted significant control over the terms and conditions of Plaintiff's employment. For example, both WPS and Aston Carter closely supervised and assigned Ms. Boyd's day-to-day activities, possessed the authority to hire and fire her, and established rules for her conduct while on duty.

*Unpaid Overtime*

28. Within the last three years and continuing to date for those still employed by WPS, Plaintiff Boyd and other Claims Representatives performed job duties, including but not limited to: answering and handling calls and claims for WPS; reviewing and responding to alerts and assignments from supervisors using company-issued software; using company-issued software to document and process calls/claims; and otherwise providing call center services.

29. In her position as a Claims Representative, Plaintiff earned a base hourly rate of $23.05 per hour.

30. In her position as a Claims Representative, Plaintiff and all those similarly situated were scheduled to work at least eight hours per day, Monday through Friday each week. As a result, Plaintiff Boyd and all those similarly situated were regularly scheduled to perform at least 40 hours of work each week as part of their base schedule, meaning that all additional work suffered or permitted by WPS outside those scheduled shifts is work in excess of 40 hours in a workweek.

31. Initially, Plaintiff was scheduled to work a shift of 9:00 am to 5:30 pm with a half-hour unpaid meal break. Her shift schedule later changed to 8:00 am to 4:30 pm with a half-hour unpaid meal break.

32. Within the last three years and continuing to date, Plaintiff and all those similarly situated, when working their regularly scheduled shifts for WPS, were suffered or permitted to perform unpaid overtime work before and after their scheduled shifts on a regular and recurring basis. For example, before her shift began each day, Plaintiff Boyd logged into her computer, set up the required equipment for her shift, checked new alerts related to job tasks that she needed to read before handling calls, and otherwise performed the duties described in paragraph 28 above. Employer-issued software that Plaintiff Boyd needed to boot up and have running prior to her scheduled shift start time—and in fact were required for her duties—include Ecis, the phone system she used for handling calls, Echos, a system she used to document what transpired on calls, and others. Consistent with her Employers' stated expectations, Ms. Boyd began these activities on average between ten and fifteen minutes before the start of her shift each day.

33. The Employers' expectation for all Claims Representatives, including Plaintiff Boyd and all those similarly situated, was that they be fully logged in, with all required software booted up, and handling calls at the very start of their scheduled shift. For example, Plaintiff was once reprimanded for not having her systems up and running before the start of her shift. A supervisor instructed her to start her systems earlier to avoid that from happening again, and yet still the Employers refused to compensate Plaintiff and those similarly situated for this pre-shift work.

34. Claims Representatives also regularly have calls that extend beyond the end of their shifts. For example, at least once or twice per week, Plaintiff Boyd had a call that extended beyond the end of her shift.

35. Plaintiff, and those similarly situated, received no pay (not even straight-time pay) for these regular and recurring pre-shift and post-shift hours performing these activities integral and indispensable to their principal activities outside their regular 40-hour weekly schedule.

### *Refusal to Accommodate Plaintiff Boyd's Disability*

36. As she notified her Employers, Plaintiff has a disability in the form of postpartum urinary incontinence and chronic urinary tract issues which require her to have access to a restroom more frequently than usual and without any restrictions (such as having to pre-schedule her restroom breaks).

37. Instead of accommodating Plaintiff's disability, her Employers' representatives, including but not limited to Virginia Russell, tracked her time by the minute and subjected her to frequent harassment if she was ever offline to use the restroom outside of her scheduled break times.

38. On or around May 10, 2023, Plaintiff contacted Aston Carter Coordinator, Emily Loane, by phone regarding concerns she was having about her placement at WPS and about the environment and its effects on her disability.

39. On June 5, 2023, Plaintiff was reported for taking additional restroom breaks throughout her shift by her WPS supervisor Virginia Russel.

40. Plaintiff informed WPS that her additional breaks during her shift were due to her disability, and she could not control her need for additional restroom breaks.

41. After a phone call with Aston Carter personnel on June 6, 2023, Plaintiff requested accommodation from WPS through Aston Carter for additional unscheduled time in her day to use the restroom as needed.

8

42. Initially, the Employers permitted Plaintiff some days off to attend to medical needs related to her disability but did not grant her request to be allowed short, unscheduled restroom breaks. Then, on June 20, 2023, WPS claimed Plaintiff's documentation was "not sufficient" because it needed additional information "regarding what your provider means by 'liberal' access to a restroom."

43. Based on the Employers' response, Plaintiff returned to the doctor, and on or around June 23, 2023, completed the Disability Accommodations forms to support her request for unscheduled break time for restroom use due to her disability.

44. In documentation provided to Plaintiff's employers, Plaintiff's physician, Dr. Laura Toso, noted that Plaintiff "will need extra time when using the restroom during the workday, as well as more restroom breaks due to heavy bleeding. Please allow extra time."

45. On June 20, 2023, another physician, Dr. Christopher Haas, stated that Plaintiff had difficulty performing a job function without an accommodation because she has a disability, and she did not have adequate access to the bathroom. Dr. Haas also requested that Plaintiff be "allow[ed] at least an additional 15 minutes of bathroom privileges a day as daily exception;" and to have "access to the bathroom as needed." This was also provided to Plaintiff's Employers.

46. As also provided to Plaintiff's employers, Dr. Toso stated again on June 23, 2023, that Plaintiff's disability required "extra time when using the restroom during the work day as well as more restroom breaks due to heavy bleeding."

47. Between August 8, 2023, and August 10, 2023, Plaintiff was informed that the proposed accommodation provided by Employers would be an additional *scheduled* 15-minute break which she would then need to make up on the beginning or end of her shift.

9

48. Plaintiff noted that a scheduled break was not a reasonable accommodation for her disability as she needed additional "daily exception" time and not an additional scheduled break. Restroom breaks that are scheduled in advance are facially inadequate to accommodate Plaintiff's issue, as any reasonable person acting in good faith would immediately conclude.

49. On August 24, 2023, Loane again sought clarification from Plaintiff on the need for an unscheduled restroom time rather than an additional scheduled break. Plaintiff once again directed WPS's attention to the language provided by her physicians on the disability accommodation forms. Plaintiff once again notified her Employers that because an accommodation consisting of a scheduled break was not reasonable given her disability, as described by her physician, she was requesting *unscheduled* time to use the restroom as needed and not additional *scheduled* breaks.

50. On August 29, 2023, Dr. Toso again stated that Plaintiff would "need more time when using the restroom and more frequent restroom breaks due to medically diagnosed abnormal uterine bleeding."

51. On September 6, 2023, Plaintiff was required to seek additional medical treatment, but her time off that day was denied (although some prior requests for time off to attend to medical issues had been granted). This medical treatment became necessary after the continued denials of Plaintiff's accommodation requests, which had effectively forced her to choose between complying with her doctor's advice and her job.

52. On September 14, 2023, Plaintiff submitted an "Ethics Complaint" for "Discrimination or Harassment" through the WPS portal "EthicsPoint," briefly describing her employers' refusal to grant her reasonable accommodation for her disability.

53. The same day, Plaintiff was pulled into a meeting with Russell, where she was informed for the first time that she had been on a "verbal warning" since June 13, 2023 (approximately one

week after her June 6, 2023, request for reasonable accommodation) for being "disrespectful," and that the verbal warning was being escalated to a "write-up" as of September 14, 2023.

54. On September 18, 2023, Plaintiff submitted a second similar "Ethics Complaint" through the WPS portal "EthicsPoint."

55. On or around September 26, 2023, Plaintiff was forced to leave her position with WPS and Aston Carter due to the intolerable conditions created by the lack of accommodation and fear of further reprisal for exercising her statutorily protected rights.

56. Plaintiff, seeing no further opportunity for continuation of her career at WPS/Aston Carter and facing continued opposition to her requests for reasonable accommodation that were necessary for her health, had no choice but to leave WPS and Aston Carter and seek new employment elsewhere.

57. Although Plaintiff has since found new employment, at a company that does not refuse her requests for reasonable accommodations, she has faced a significant pay decrease.

**Count I**
**Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act**
**(Failure to Provide a Reasonable Accommodation)**

58. Plaintiff adopts, and incorporates by reference herein, paragraphs 1-57 of this Complaint.

59. At all relevant times, Plaintiff was a qualified individual with disabilities within the meaning of Section 101(8) of the ADA, 42 U.S.C. § 12111(8).

60. The American Disabilities Act of 1990, as amended, makes it unlawful for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . ." 42 U.S.C. § 12112(b)(5)(A).

11

61. Defendant WPS failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act (42 U.S.C. §§ 12112 *et seq.*), as amended, when it refused to provide Plaintiff with reasonable accommodations for her disability, such as unscheduled restroom breaks in accordance with her physician's orders. Providing such an accommodation would have enabled Plaintiff to perform the essential functions of her position and would not have posed any undue hardship on the Employers.

62. As a direct and proximate result of Defendant's actions, omissions and decisions, Defendant negatively impacted the terms and conditions of Plaintiff's work. In addition, Defendant's actions caused Plaintiff to suffer lost pay and benefits, lost career benefits, emotional pain, mental anguish, multiple adverse physical manifestations, including, but not limited to, infections impacting her bladder and kidneys, disrupted sleep, as well as financial and other adverse consequences for which plaintiff seeks full damages and make whole relief.

63. Plaintiff is also entitled to attorneys' fees and costs. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(k).

64. Defendant's actions, omissions and decisions were done in a knowing, willful, wanton, reckless and bad faith manner. Defendant's actions were also taken with malice or with reckless indifference to Plaintiff's federally protected rights.

### Count II
### Discrimination and Retaliation in Violation of the Americans with Disabilities Act
### (Pretextual Discipline and Constructive Discharge)

65. Plaintiff adopts, and incorporates by reference herein, paragraphs 1-57 of this Complaint.

66. At all relevant times, Plaintiff was a qualified individual with disabilities within the meaning of Section 101(8) of the ADA, 42 U.S.C. § 12111(8).

12

67. The American Disabilities Act of 1990, as amended, makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

68. Defendant intentionally discriminated against plaintiff, a qualified individual with a disability, on the basis of her disabilities by issuing pretextual discipline and constructively disciplining plaintiff in violation of the ADA. 42 U.S.C. §§ 12112(a).

69. Defendant WPS has discriminated against plaintiff on the basis of her disability and retaliated against Plaintiff for the exercise of her rights under the law in violation of the Americans with Disabilities Act (42 U.S.C. §§ 12112 *et seq.*), as amended. Specifically, defendant WPS discriminated and retaliated against plaintiff by issuing her baseless discipline on the same day that she filed an "Ethics Complaint" for "Discrimination or Harassment" about her employers' failure to accommodate her disability in violation of 42 U.S.C. § 12203(a).

70. This retaliation led Plaintiff to conclude that her working conditions with WPS were intolerable due to the reprisal and continued discrimination, and she was constructively discharged on September 26, 2023.

71. The temporal proximity between the write-up the Plaintiff received on September 14, 2023 and her discrimination and harassment complaint filed earlier that same day, among other things, demonstrates the retaliatory nature of the discipline.

72. As a direct and proximate result of defendant WPS's actions, omissions and decisions, plaintiff has suffered and continues to suffer lost pay and benefits, lost career benefits, emotional distress, pain and suffering, as well as financial and other adverse consequences for which plaintiff seeks full damages and make whole relief.

73. Defendant WPS's actions, omissions and decisions were done in a knowing, willful, wanton, reckless and bad faith manner. Defendant's actions were also taken with malice or with reckless indifference to Plaintiff's federally protected rights.

## Count III
## Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 207(a)

74. Plaintiff adopts, and incorporates by reference herein, paragraphs 1-57 of this Complaint.

75. At all times material herein, Plaintiff, and all others similarly situated, has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

76. At all times material herein, during those workweeks in which Plaintiff, and all others similarly situated, have worked hours in excess of 40 hours a week, they have performed work, including but not limited to the tasks listed in Paragraphs 28 and 32. This work outside of the regularly scheduled shifts for Plaintiff and all those similarly situated has caused them to work in excess of 40 hours in a given week without lawful compensation. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

77. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiff, and all others similarly situated, for work that they have been suffered or permitted to work outside of their official shifts. As a result, at all times material herein,

Plaintiffs have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for the hours of worked in excess of 40 in a workweek.

78. Work not requested but suffered or permitted is nevertheless still compensable work time, where the employer knows or has reason to believe that the employee is continuing to work. *See* 29 C.F.R. § 785.11. Defendant had actual and constructive knowledge of the work Plaintiff, and others similarly situated, performed before and after her scheduled shifts, because, in addition to direct complaints about unpaid time, Plaintiff and all those similarly situated performed these duties in accordance with the policy requiring that Claims Representatives have finished booting up and logging into their computers and required software systems and are already answering calls by the moment their shifts begin, even though they receive no pay for this additional work.

79. By failing to pay plaintiff overtime compensation at the rate of one and one-half times plaintiff's regular rate of pay for work performed before and after her scheduled shift, as described *supra*, defendant has violated the overtime requirements of section 207(a) of the FLSA, 29 U.S.C. § 207(a).

80. As a result of Defendant's willful and purposeful violations of the FLSA, pursuant to 29 U.S.C. § 216(b), there have become due and owing to Plaintiff, and all others similarly situated, an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Employers, and Plaintiff is unable to state at this time the exact amount owing to her and those similarly situated, but from these records, Plaintiff will be able to ascertain the precise extent of these violations of the FLSA.

81. Employers are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment

records with respect to Plaintiff and those similarly situated from which the amount of the Employers' liability can be ascertained.

82. Pursuant to 29 U.S.C. § 216(b), Plaintiff, and all others similarly situated, are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay overtime compensation as alleged herein.

83. Plaintiff, and all others similarly situated, are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

### **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendant on all claims brought and provide her with the following relief:

(a) Order a complete and accurate accounting of all the compensation to which Plaintiff is entitled under the Americans with Disabilities Act (42 U.S.C. §§ 12112 *et seq.*), as amended, ("ADA");

(b) Award Plaintiff damages for back pay and related benefits of which she was deprived by Defendant's discriminatory and retaliatory actions for each violation of the ADA;

(c) Award Plaintiff compensatory damages against Defendant in the maximum amount of damages allowable for each violation of the ADA, including interest;

(d) Award Plaintiff punitive damages for actions taken with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA;

(e) Order a complete and accurate accounting of all the compensation to which the Plaintiff and all those similarly situated are entitled under the Fair Labor Standards Act ("FLSA");

(f) Award Plaintiffs and all those similarly situated monetary damages in the form of back pay for their unpaid compensation;

(g) Award Plaintiff and those similarly situated monetary liquidated damages in an amount equal to their unpaid compensation pursuant to 29 U.S.C. § 216(b).

(h) Award Plaintiff and those similarly situated their reasonable attorneys' fees to be paid by the Defendants, and the costs and disbursements of this action; and

(i) Grant such other relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a trial by jury on all claims presented in this Complaint pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ John W. Stewart
John W. Stewart (Pro Hac Vice to be Submitted)
Matthew D. Purushotham (Pro Hac Vice to be Submitted)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W., Suite 1000
Washington, D.C. 20005
jws@mselaborlaw.com
mdp@mselaborlaw.com
Phone: (202) 833-8855
Fax: (202) 452-1090

/s/Christopher Ahrens
Christopher Aherns (WI Bar #1043237)
Alex J. Sterling (WI Bar #1107931)
THE PREVIANT LAW FIRM S.C.
310 West Wisconsin Avenue
Suite 100 MW
Milwaukee, WI 53203
Phone: (414) 271-4500
Fax: (414) 271-6308
cja@previant.com

*Counsel for Plaintiffs*

17